RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AMBER JONES; DEANNA LACK,

> *Plaintiffs-Appellants*,

*v.*

KENT COLEMAN; HENRY FINCHER; PATRICIA HEIM;
TOM LAWLESS; NORMA LESTER; TOM MORTON, in
their official capacities as members of the Tennessee
Registry of Election Finance,

> *Defendants-Appellees*.

No. 16-5908

---

Appeal from the United States District Court for
the Middle District of Tennessee at Nashville.
No. 3:16-cv-00677—Waverly D. Crenshaw Jr., District Judge.

Argued: February 1, 2017

Decided and Filed: February 15, 2017

Before: BATCHELDER, SUTTON, and KETHLEDGE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Michael J. Wall, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellants. Erin F. Merrick, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. **ON BRIEF:** Michael J. Wall, James G. Stranch, III, Anthony A. Orlandi, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellants. Janet M. Kleinfelter, Lyndsay F. Sanders, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge.  This case calls upon us to decide whether the district court properly abstained from exercising its jurisdiction in a case alleging that Tennessee's Campaign Financial Disclosure Act, Tenn. Code Ann. §§ 2-10-101 *et seq.*, unconstitutionally burdens the rights of free speech and association.  We find that the district court's abstention was improper in this case, especially in light of the alleged chilling effects of the Act.  Accordingly, we reverse and remand for further proceedings.

## I. BACKGROUND

Appellants Amber Jones and Deanna Lack are parents of school-age children in White County, Tennessee.  In the fall of 2015, Jones and Lack, together with several other parents, formed an unincorporated group called the Association for Accurate Standards in Education ("AASE").  AASE opposed another group of parents' advocating for removal of a social studies textbook that includes discussion of Islam from the public schools in White County.  Approximately eight persons, all part-time volunteers, comprise AASE.  It does not have a separate bank account, and it does not keep regular records of money collected or spent.  There are no formal membership requirements, and there are no regular in-person meetings.  Jones serves as the president of the group, and Lack serves as the secretary; there is no treasurer.  Approximately five or six people have donated to AASE since its formation, but no individual donation has exceeded $200; indeed total donations to AASE have yet to reach $500.

Several seats on the White County Board of Education were up for election in August 2016, and the parents comprising AASE wanted the group to support and oppose candidates for at least two seats on the Board of Education.  Appellants believed their message would be amplified if it were delivered through AASE.  At the time, Appellants did not want AASE to make direct campaign contributions to candidates, but they intended for AASE to spend less than $250 on independent expenditures, including yard signs, stickers, and brochures.

In October 2015, Appellants met with members of Williamson Strong, an unincorporated group of parents that disseminates information and facilitates discussion about school board candidates and election issues in nearby Williamson County, Tennessee. It was then that Appellants learned that the Tennessee Registry of Election Finance ("the Registry") had fined Williamson Strong $5,000 for failing to certify a treasurer or file financial disclosure statements. "In finding that [Williamson Strong] is a political campaign committee[1] subject to these requirements, the Registry relied on Tenn. Code Ann. § 2-10-102(12)(A), which defines a political campaign committee as, among other things,: 'A combination of two (2) or more individuals . . . to support or oppose any candidate for public office or measure . . . .'" *Williamson Strong v. Tenn. Bureau of Ethics and Campaign Fin.*, No. 3:15–cv–0739, 2015 WL 5794561, at *1 (M.D. Tenn. Oct. 2, 2015) (staying the case because of an ongoing state administrative hearing). Appellants viewed AASE as a group comparable to Williamson Strong and became concerned that the Registry could also fine AASE for engaging in the aforementioned political activities without first registering as a political campaign committee and complying with applicable rules and regulations.[2]

Appellants sued the officials of the Registry—Appellees Kent Coleman, Henry Fincher, Patricia Heim, Tom Lawless, Norma Lester, and Tom Morton—in their official capacities under 42 U.S.C. § 1983, claiming that the Act violates their First Amendment rights of free speech and association and their Fourteenth Amendment rights of equal protection and due process. Appellants sought both declaratory and injunctive relief. After full briefing and oral argument, the district court stayed the case pending the outcome of the state administrative proceedings in

---

[1]Tennessee campaign finance law uses the term "political campaign committee" for what is commonly known as a "political action committee," or "PAC."

[2]If AASE is considered a political campaign committee under Tennessee law, it would have to, among other things: (1) pay an annual registration fee of $100, Tenn. Code Ann. § 2-10-121; (2) appoint a political campaign treasurer and certify her name and address to the Registry and to the county election commission, Tenn. Code Ann. §§ 2-10-105(e)(1) and 2-10-105(e)(2); (3) maintain a separate campaign bank account, Tenn. Comp. R. and Regs. 0530-1-1-.01; (4) file detailed campaign financial disclosure statements at least quarterly, Tenn. Code Ann. §§ 2-10-102, 2-10-105, 2-10-107; and (5) keep all financial records for at least two years after the date of election to which the records refer, Tenn. Code Ann. § 2-10-105(f). *See generally* Tenn. Bureau of Ethics and Campaign Fin., Campaign Finance Guidelines for PACs, https://www.tn.gov/assets/entities/tref/attachments/CandidateCFDBooklet8x11.pdf.

the *Williamson Strong* case,[3] and opining as well that the Act's application represented an unclear question of state law that, once interpreted by state courts, could eliminate the potential First and Fourteenth Amendment violations. Appellants filed a motion to alter the judgment, which the district court denied. Appellants timely appealed both orders, arguing that the district court's decision to abstain was error and that the district court should have granted their motion for a preliminary injunction.

## II. Discussion

### A. Standard of Review

We have appellate jurisdiction under 28 U.S.C. § 1291 to consider the district court's order because orders of abstention are considered final judgments. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 9 (1983); *Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713 (1962). We review de novo a district court's decision to abstain from exercising jurisdiction that has otherwise been properly invoked. *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).

### B. Standing

The Registry argues that Appellants lack standing to bring either an as-applied or a facial (*i.e.*, "overbreadth") challenge, and that the district court therefore did not have jurisdiction to hear the case. We disagree. First, Appellants can bring this claim on behalf of AASE. The Supreme Court has held that in "overbreadth" challenges, "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984) (quoting *Broadrick v. Oklahoma*, 413 U.S. 610, 612 (1973)); *Speet v. Schuette*, 726 F.3d 867, 872–74 (6th Cir. 2013). Second, regarding as-applied challenges, the Supreme Court has repeatedly held that individuals or groups need not wait to be prosecuted for the exercise of First Amendment rights before they can bring a lawsuit,

---

[3]Hereinafter, "*Williamson Strong*" refers to the ongoing state administrative proceedings, not the federal district court case.

provided there is a "claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972); *see also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392–93 (1988); *Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 451–52 (6th Cir. 2014). Here, Appellants have done more than merely allege a potential chilling effect of the law. They have not only refrained from making independent political expenditures through AASE, but they have also raised the specter of fines and registration requirements, citing the ongoing *Williamson Strong* case, in which the Registry stipulated that Williamson Strong is an unincorporated association for the purpose of the Tennessee Financial Disclosure Act.

Based on the allegations in the Complaint and the aforementioned stipulation in *Williamson Strong*, we are satisfied that Appellants meet both the constitutional requirements for standing, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), and the somewhat relaxed prudential standing requirements for First Amendment challenges. *See Am. Booksellers*, 484 U.S. at 392; *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007).

### C. *Pullman* Abstention

"The doctrine of abstention, under which a [d]istrict [c]ourt may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it." *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (describing the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). One exception to this general rule is based on the avoidance of "needless friction with state policies," and "a premature constitutional adjudication." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). *Pullman* abstention, as this exception has come to be called, does not "involve the abdication of federal jurisdiction, but only the postponement of its exercise," *Harrison v. NAACP*, 360 U.S. 167, 177 (1959), which differentiates it from other forms of federal judicial abstention. *E.g., Younger v. Harris*, 401 U.S. 37 (1971).

In *Pullman*, the Supreme Court "held that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). Thus the primary scenario for a district court's application of *Pullman* abstention is one in which the state-law question is an unsettled issue best decided by state courts. *Harris Cty. Comm'rs Court v. Moore*, 420 U.S. 77, 83–84 (1975). In *Moore*, the Supreme Court illustrated some considerations for determining when a district court should abstain under *Pullman*:

> Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, we have regularly ordered abstention. Similarly, when the state-law questions have concerned matters peculiarly within the province of the local courts, we have inclined toward abstention. On the other hand, where the litigation has already been long delayed, or where it has seemed unlikely that resolution of the state-law question would significantly affect the federal claim, the Court has held that abstention should not be required.

*Id.* (internal citations omitted).

The application of *Pullman* abstention results in significant financial and time burdens on the parties and acts almost as an exhaustion requirement, requiring the federal court plaintiff to seek an authoritative state court construction of the state-law issue before a federal court will entertain her claim. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997) ("*Pullman* abstention proved protracted and expensive in practice, for it entailed a full round of litigation in the state court system before any resumption of proceedings in federal court."). Since the Supreme Court created the *Pullman* doctrine, most states have adopted certification procedures, which permit the state's highest court to consider novel questions of state law that have been "certified" by a federal court. *See id.* (citations omitted). The Supreme Court has indicated that a district court's certification of a novel issue of state law may be preferable to its abstaining under *Pullman*. "Certification today covers territory once dominated by a deferral device called '*Pullman* abstention' . . . . Certification procedure, in contrast, allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of an authoritative response." *Id.* at 75–76.

Perhaps because of the time, energy, and resources involved in resolving a case after a federal district court invokes *Pullman* abstention, the Supreme Court has "been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 467 (1987) (collecting cases). This is especially true in cases challenging overbroad laws that have no limiting construction. *See Dombrowski v. Pfister*, 380 U.S. 479, 489–90 (1965) ("[A]bstention . . . is inappropriate for cases [in which] . . . statutes are justifiably attacked on their face as abridging free expression. . . ."). "In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler v. Koota*, 389 U.S. 241, 252 (1967).

"In cases involving a facial challenge to a statute," the threshold question is "whether the statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'" *Hill*, 482 U.S. at 468 (quoting *Harman v. Forssenius*, 380 U.S. 528, 534–35 (1965)) (citing *Midkiff*, 467 U.S. at 436). If the statute has no limiting construction, then abstention is improper, even if the statute has never been interpreted by a state tribunal. *Harman*, 380 U.S. at 535; *see also Hill*, 482 U.S. at 469.

### D. Application

The Tennessee Campaign Financial Disclosure Act regulates, among other things, the disclosure of financial contributions to political campaign committees. Tenn. Code Ann. §§ 2-10-10 *et seq.* The Act is administered by the Registry of Election Finance, an independent six-member entity. Tenn. Code Ann. §§ 2-10-201, *et seq.* The Act's regulations apply to "political campaign committees," which it defines as:

> (A) *A combination of two (2) or more individuals, including any political party governing body, whether state or local, making expenditures, to support or oppose any candidate for public office or measure*, but does not include a voter registration program;
> (B) Any corporation or any other organization making expenditures, except as provided in subdivision (4), to support or oppose a measure; or
> (C) Any committee, club, corporation, association, or other group of persons which receives contributions or makes expenditures to support or oppose any

candidate for public office or measure during a calendar quarter in an aggregate amount exceeding two hundred fifty dollars ($250).

Tenn. Code Ann. § 2-10-102(12) (emphasis added).

It is § 2-10-102(12)(A) that Appellants fear impermissibly burdens their First Amendment rights of free speech and association. They rely on cases such as *F.E.C. v. Mass. Citizens for Life, Inc.*, 479 U.S. 238 (1986), and *Citizens United v. F.E.C.*, 558 U.S. 310 (2010), which have, over time, gradually increased the freedom of corporate and non-profit groups to engage in political speech. But because we decline to rule on the merits of Appellants' argument, we need not discuss the potential constitutional weaknesses of the Act further. Rather, the sole issue before us is whether the district court correctly abstained from hearing Appellants' constitutional challenge to the Act.

The district court determined that abstention was warranted while *Williamson Strong* was being reviewed in state administrative proceedings. According to the district court, the central issue in *Williamson Strong* is whether the Williamson Strong group is classified as a political campaign committee under § 2-10-102(12)(A). Further, the district court determined that abstention was appropriate because "[t]he Registry has not had the opportunity to review its interpretation of the statute, and the state courts have not had a chance to interpret it." Thus, the district court reasoned that, eventually, the final resolution of the *Williamson Strong* case will provide clear answers regarding the application of § 2-10-102(12)(A) to groups like AASE, perhaps avoiding a First Amendment problem.

But the district court's reasoning, like a house built on sand, cannot stand. The district court's reliance on *Williamson Strong* to clarify the scope of § 2-10-102(12)(A) is a fatal flaw in its analysis because this issue is not before the administrative law judge in the *Williamson Strong* proceedings. Indeed, the Registry and Williamson Strong (the group) "stipulate[d] that Williamson Strong is an unincorporated association and that an unincorporated association constitutes a 'combination of two (2) or more individuals' for purposes of Tennessee Code Annotated § 2-10-102(12)(A)." The dispute in *Williamson Strong* concerns whether the Williamson Strong group made "expenditures, to support or oppose any candidate for public office or measure," not including a "voter registration program," for purposes of Tennessee Code

Annotated § 2-10-102(12)(A). Williamson Strong and the Registry also dispute the Registry's jurisdiction and its legal authority to impose civil penalties. Because the parties do not dispute the threshold issue of whether Williamson Strong is a political campaign committee under Tennessee law, it is far from guaranteed that the resolution of *Williamson Strong* will correspondingly resolve any unclear issues of state law that might eliminate the federal constitutional questions in the present case.

Moreover, we do not find § 2-10-102(12)(A) to be so ambiguous as to necessitate abstention. In order to invoke *Pullman* abstention, a district court must ask whether the state statute is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question . . . ." *Harman*, 380 U.S. at 535 (1965) (citing *Baggett v. Bullitt*, 377 U.S. 360, 375–79 (1964)). In Tennessee, a "'[p]olitical campaign committee' means . . . *[a] combination of two (2) or more individuals*, . . . to support or oppose *any* candidate for public office or *measure . . .*" Tenn. Code Ann. § 2-10-102(12)(A) (emphasis added). This language has the potential to include married couples who donate to any campaign or make any expenditure related to a political measure. Indeed, Tennessee's layman's manual, the *Citizens' Guide to Campaign Finance*, states, "If you and other individuals act together as a group to conduct activities to influence a [sic] election(s), the group may be a 'political campaign committee.'" Tenn. Bureau of Ethics and Campaign Finance, *Citizens' Guide to Campaign Finance* (last updated Jan. 2015), https://www.tn.gov/assets/entities/tref/attachments/Citizens Guide.pdf. Whether Tennessee would enforce such a broad statute is not part of the *Pullman*-abstention analysis. The district court did not analyze whether § 2-10-102(12)(A) might be subject to an interpretation that does not violate the First Amendment; rather, it adopted a wait-and-see approach relying on a different case that is centered around a different issue. This, we conclude, was error. We imagine that the district court would have been hard-pressed to find an interpretation of this statute that satisfies the First Amendment, but because the district court passed on the opportunity so to do, we do not rule on the issue.

Furthermore, the Supreme Court has called on federal courts to exercise their jurisdiction in cases in which the statute is not ambiguous, even if the statute has never been interpreted by a state court. *See Baggett*, 377 U.S. at 375; *see also Harman*, 380 U.S. at 535; *Hill*, 482 U.S. at

469.  Here, contrary to the district court's statement, the Tennessee Supreme Court *has* expounded on the predecessor to § 2-10-102(12).  In *Bemis Pentecostal Church v. State*, 731 S.W.2d 897 (Tenn. 1987), thirteen churches brought a declaratory judgment action, alleging that the Tennessee Campaign Financial Disclosure Act of 1980 violated their First and Fourteenth Amendment rights.  The churches had organized a campaign to oppose a referendum, the adoption of which would have permitted on-premises liquor consumption in Jackson, Tennessee.  *Id.* at 899.  "They purchased radio, television, and newspaper advertisements expressly opposing the adoption of the local liquor option."  *Id.*  Some churches donated to other efforts also opposing the referendum.  *Id.*  The thirteen churches spent a total of $5,150 in their efforts to defeat the referendum, but "[n]o church filed a disclosure statement as required by the terms of the Act."  *Id.*  In holding that the Act applied to the churches, the Tennessee Supreme Court stated:

> Moreover, T.C.A. § 2-10-102(10) [the predecessor to § 2-10-102(12)] *was drafted to encompass any combination of two or more persons within the meaning of a 'political campaign committee' to insure that every group participating in a particular election to attempt to affect the voting outcome could not avoid the disclosure requirements*.  The General Assembly clearly intended that referenda campaigns would be included in the disclosure of the Act.

> No significant dispute exists in this case that, as written, the Act applies to the Plaintiffs.  Under T.C.A. § 2-10-102(10) [now subsection (12)], these churches are combinations of two or more individuals making expenditures to support or oppose a measure, § 2-10-102(10)(A), or are organizations making expenditures to support or oppose a measure, § 2-10-102(10)(B), or are associations or other groups of persons that receive contributions or make expenditures to support or oppose any measure during a calendar quarter in an aggregate amount exceeding [$250,] 2-10-102(10)(C).

*Id.* at 902 (emphasis added).

But the Tennessee Supreme Court also acknowledged that the Act does not impose burdens on "clubs, committees, associations, or other groups not otherwise covered by the Act," which permits such groups "to receive or spend the aggregate of $250 per calendar quarter to attempt to influence an election outcome without being defined as a political campaign committee."  *Id.* at 905; Tenn. Code Ann. § 2-10-102(12)(C).  We find peculiar such an exception to the otherwise broad rule of § 2-10-102(12)(A)—are not clubs, committees,

associations, or other groups by nature "combinations of two or more individuals"?—but this subsection neither cures the potential constitutional infirmity of § 2-10-102(12)(A), nor is at issue here.[4]

Although we decline to reach the merits of the parties' arguments today, we echo the Supreme Court's strong aversion to the invocation of *Pullman* abstention when a state statute is being challenged on First Amendment grounds and when that statute is not obviously susceptible to a limiting construction. *See Hill*, 482 U.S. at 467–71. We reiterate that abstention is "the exception and not the rule," *id.* at 467 (citing *Colo. River* 424 U.S. at 813), and that district courts should engage in a thorough analysis of the state-law issue before abstaining under *Pullman*. Additionally, when a state has made certification available, as Tennessee has done,[5] we urge district courts to carefully consider this option rather than simply abstaining. The Supreme Court has stated a clear preference for certification over *Pullman* abstention, recognizing that "certification of novel or unsettled questions of state law for authoritative answers by a State's highest court . . . may save time, energy, and resources and help build a cooperative judicial federalism." *Arizonans for Official English*, 520 U.S. at 77 (internal quotation marks and alterations omitted). Especially in cases alleging violations of First Amendment rights, district courts should carefully consider certifying an unclear question of state law before abstaining under *Pullman*.

Separate and apart from the free-speech problems with applying *Pullman* abstention here, when the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains. "As we see the matter . . . the abstention order did in effect deny preliminary injunctive relief and effectively shut the federal courthouse door upon plaintiffs in their search for timely vindication of their federal constitutional claims." *Daniel v. Waters*, 515 F.2d 485, 492 (6th Cir. 1975).

---

[4]Appellants stated in their Complaint that AASE had planned to spend less than $250 on independent expenditures for the 2016 White County school board election.

[5]*See* Tenn. Supreme Court R. 23 § 1 ("The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of the United States.").

**III. CONCLUSION**

For the foregoing reasons, we reverse the district court's order staying the case, and we remand for further proceedings consistent with this opinion.