NOT RECOMMENDED FOR PUBLICATION

No. 17-5846

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

AMBER JONES, et al.,

    Plaintiffs-Appellants,

v.

WILLIAM HAYNES, III, et al.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

**FILED**

Jun 05, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

---

BEFORE:    BATCHELDER, SUTTON, KETHLEDGE, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Appellants Amber Jones and Deanna Lack appeal the district court's decision to dismiss their suit for lack of subject-matter jurisdiction after finding that the Appellants' case is moot. Because we agree that Appellants' case is moot following the repeal of Tenn. Code Ann. § 2-10-102(12)(A) (2015),[1] we AFFIRM.

I.

Our prior opinion in this case sets forth much of the relevant factual background, and we repeat and expand on only what is necessary to resolve the appeal. *See Jones v. Coleman*, 848 F.3d 744 (6th Cir. 2017). Appellants are parents of school-age children in White County, Tennessee, who formed an unincorporated group with other parents called the Association for Accurate

---

[1] The current version of Tenn. Code Ann. § 2-10-102(12)(A) (2017) is not at issue in this case. All references to § 2-10-102(12)(A) are to the 2015 version, which has been repealed.

Standards in Education ("AASE"),[2] in part to support and oppose candidates for the White County Board of Education. At some point, AASE became concerned that it could be considered a political campaign committee[3] and fined $5,000 because it was "[a] combination of two (2) or more individuals . . . to support or oppose any candidate for public office or measure . . . .'" Tenn. Code. Ann. § 2-10-102(12)(A) (now repealed). If the Tennessee Registry of Election Finance ("the Registry") considered AASE to be a political campaign committee AASE could face fines for failing to register as a political campaign committee and to comply with various governing rules and regulations before engaging in the aforementioned political activities. The rules and regulations governing political campaign committees are extensive and were daunting for the approximately eight members of AASE.

Appellants filed suit against the officials of the Registry in their official capacities under 42 U.S.C. § 1983, seeking declaratory and injunctive relief on their claims that the registration and disclosure requirements for political campaign committees under Tennessee's Campaign Financial Disclosure Act were unduly burdensome and violated their First and Fourteenth Amendment rights. Specifically, Appellants asserted that because they believed their unincorporated association fell within the definition of "political campaign committee" in Tenn. Code Ann. § 2-10-102(12)(A), they feared being assessed civil penalties for failing to register AASE and could not freely engage in the political process. Appellees filed a motion to dismiss on various grounds, including asking the district court to abstain under *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941), because there was an ongoing state administrative proceeding involving

---

[2] AASE states that it has since changed its name to Tennessee Public Education Advocates, but the group is otherwise the same. For simplicity and continuity with our prior opinion, we continue to refer to the group as AASE.

[3] Tennessee campaign finance law uses the term "political campaign committee" for what is commonly known as a "political action committee" or "PAC."

interpretation of the same statute. The district court granted the motion on abstention grounds and stayed the action. Appellants filed a motion to alter the judgment, which the district court denied. Appellants appealed both orders, arguing that the district court's decision to abstain was error and that the district court should have granted their motion for a preliminary injunction.

On appeal, we concluded that Tenn. Code Ann. § 2-10-102(12)(A) was not "so ambiguous as to necessitate abstention." *Jones*, 848 F.3d at 744. We reversed the district court's order staying the case and remanded for further proceedings.

By the time the case returned to the district court for consideration on remand, several important events had occurred. First, the Tennessee General Assembly introduced legislation to, among other things, repeal Tenn. Code Ann. § 2-10-102(12)(A). Second, an administrative law judge had dismissed with prejudice a case before the Registry against an entity similar to AASE, Williamson Strong. [R. 59-1 at 499.] Finally, the Registry voted to accept the administrative law judge's order regarding Williamson Strong and to take "no action on any complaints or matters concerning a group failing to register as a Political Campaign Committee, as defined in T.C.A. § 2-10-102(12)," until the Registry's next meeting, allowing time for the Tennessee General Assembly to vote on the pending repeal of § 12-10-102(12).

Appellees contacted Appellants to propose a joint motion to stay the remand proceedings until the conclusion of the legislative process. [R. 63-5 at 567.] Rather than enter into an agreement to stay the proceedings, Appellants filed a renewed motion for preliminary injunction asking the district court to enjoin Appellees from enforcing § 2-10-102(12)(A). [R. 55.] Appellants had "bec[o]me aware of an upcoming special election" in which AASE wished to support a particular unopposed candidate by "spend[ing] approximately $25 on targeted advertising on Facebook" to "bring attention [to] and build momentum" for her campaign. [R. 55

at 446.] Appellees opposed the motion and moved to stay all proceedings in the case until July 1, 2017, in light of the legislation pending before the Tennessee General Assembly to repeal § 2-10-102(12)(A). [R. 59 at 476.]

On April 19, 2017, the district court granted Appellants' motion for preliminary injunction, but also granted Appellees' motion to stay the case and ordered the parties to file a status report on July 1, 2017, advising the court of the status of the pending legislation and the need for further proceedings, if any. [R. 70 at 606.] Under the protection of the preliminary injunction, AASE purchased a $3.23 Facebook advertisement supporting the unopposed candidate in the special election. [R. 75 at 632, 635.] The governor of Tennessee signed the repeal into law less than a month later, on May 9, 2017.

Viewing the repeal as removing the live case or controversy from the case, Appellees filed a motion before the district court to dismiss Appellants' complaint on mootness grounds. [R. 71.] Appellants opposed the motion, arguing that the case was not moot because Appellees could still take action against them for the $3.23 Facebook advertisement they had placed while the now-repealed statute was still in effect. [R. 71 at 622.] The district court rejected this argument, concluded that the repeal of Tenn. Code Ann. § 2-10-102(12)(A) mooted Appellants' claims, and dismissed the complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Appellants appealed the dismissal.

II.

We review de novo a district court's dismissal for lack of subject matter jurisdiction. *Mokdad v. Sessions*, 876 F.3d 167, 169 (6th Cir. 2017).

Under Article III of the United States Constitution, federal courts have the power to adjudicate only "Cases" and "Controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Parties lack a legally cognizable interest in a case's outcome when "events . . . make it 'impossible for the court to grant any effectual relief whatever to a prevailing party.'" *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

We have treated "cessation of the allegedly illegal conduct by government officials . . . with more solicitude . . . than similar action by private parties." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012). Government "self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Id.* "Legislative repeal or amendment of a challenged statute while a case is pending on appeal usually eliminates this requisite case-or-controversy because a statute must be analyzed by the . . . court in its present form." *Id.*

It is undisputed that the political campaign committee definition that allegedly infringed Appellants' constitutional rights has been repealed. Appellants argue that, despite the repeal, the Registry could at some indefinite point in the future initiate an action against Appellants for the $3.23 Facebook advertisement placed when the statute was in effect. [Br. 20.] Because of these potential collateral consequences, Appellants ask us not only to reverse the determination of the district court, but to decide the merits of this case. We decline the invitation to do either.

"[M]ootness [remains] if no consequences can be foreseen or *if foreseeable possible consequences seem remote.*" 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.3.1 at 124 (3d ed. 2008) (emphasis added). In this instance,

Appellants bear the burden of providing evidence establishing collateral consequences. *Tara Gold Res. Corp. v. SEC*, 678 F.3d 557, 559 (7th Cir. 2012) ("[W]ith the single exception of a challenge to a criminal conviction, collateral consequences are not presumed; they must be established by proof."). But Appellants cannot meet this burden. The prospect that the Registry might, in the future, initiate disciplinary proceedings over a single, de minimis expenditure based on a now-repealed definition of "political campaign committee" and made under the protection of a preliminary injunction is remote at best. *See Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1248 (10th Cir. 2009). Appellants have not been fined, nor is there any indication that the Registry has at any point initiated, or plans to initiate, any kind of inquiry into Appellants or AASE. In fact, the record demonstrates the opposite—that the Registry specifically does *not* have an intention to pursue administrative proceedings against Appellants or any similar parties.[4]

Appellants argue that *Suster v. Marshall*, 149 F.3d 523 (6th Cir. 1998), [Br. 26,] guides our review. But *Suster* is inapposite to the instant case. In *Suster*, incumbent judges challenged the constitutionality of the portion of Judicial Canon VII(C)(6) that imposed a general election spending limit of $75,000 on judicial candidates.[5] The district court found that plaintiffs were

---

[4] We may take judicial notice of adjudicative facts when necessary to affirm the decision of a lower court. *Int'l Bhd. Of Teamsters v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968). The Registry voted at their April 12, 2017, meeting to "take no action on any complaints or matters concerning a group failing to register as a Political Campaign Committee, as defined in T.C.A. § 2-10-102(12) . . . until its August 2017 meeting" because of pending legislation to change the definition of "political campaign committee," [R. 63-2 at 546,] and, following the repeal of T.C.A. § 2-10-102(12), dismissed complaints against four different unincorporated associations alleging that these groups met the definition of "political campaign committee" under the now-repealed statute. The Registry, in dismissing these complaints, specifically applied the current definition of "political campaign committee" even though all four complaints alleged violations that occurred under the repealed version of the statute.

[5] Appellants suggest that *Suster* informs the outcome in this case because it, in part, involved the repeal of a subsection of a judicial canon. [Br. 23-26]. But this characterization of the facts and procedural history of *Suster* is misleading. Prior to *Suster*, one of the same plaintiffs had challenged the primary spending limits in a previous iteration of the Judicial Canon VII(C)(6). *See Suster v. Board of Comm'rs on Grievances & Discipline of the Supreme Ct. of Ohio*, No. 96-cv-0235, Dkt. 1 (N.D. Ohio Feb. 5, 1996). That case resolved, and the Ohio Supreme Court amended the canon to repeal the primary spending limits six months before the plaintiffs filed a complaint in *Suster*. *See id.*; *see also Suster v. Marshall*, 951 F. Supp. 693, 696 n.1 (N.D. Ohio 1996). *Suster* was a separate and unique challenge to a different version of Judicial Canon VII(C)(6) and had nothing to do with the repeal of the primary spending limits.

likely to succeed on the merits of their challenge to the general election spending cap and entered a preliminary injunction enjoining defendants from enforcing it. Defendants appealed. While the appeal was pending, the Ohio Supreme Court amended the canon to base the spending cap on, among other things, the population of the candidate's judicial district. This court, determining that the intervening amendment did not moot the controversy explained that, "[i]f this Court were to determine that the district court erred in issuing the preliminary injunction [allowing plaintiffs to exceed the $75,000 spending cap in the prior version of the canon], then the legal interests and positions of Plaintiffs and Intervenors would be compromised as they have received no assurances that grievances will not be pursued and penalties not imposed under the old Canon." 149 F.3d at 527.

The critical difference between our case and *Suster* is that, in *Suster*, the Ohio Supreme Court merely amended the canon at issue while leaving in place stringent spending limits on judicial candidates and the very real potential for collateral consequences based on "improper" spending under either version of the canon. Here, by contrast, the challenged statutory provision has been completely eliminated and Appellants' allegations of a potential civil or criminal consequence are speculative at best. Like the district court, we find it "unnecessary, but also imprudent to determine the constitutionality of a statute that no longer exists and which has not been enforced" and shows no sign of being enforced against Appellants. *Jones v. Coleman*, No. 3:16-cv-00677, 2017 WL 3025596, at *4 (M.D. Tenn. July 14, 2017).

III.

For the foregoing reasons, we AFFIRM.