*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0323p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

BRETT RUHLMAN,

　　　　　　*Petitioner-Appellant,*

　　　*v.*

TIMOTHY BRUNSMAN, Warden,

　　　　　　*Respondent-Appellee.*

No. 09-4528

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00163—Sandra S. Beckwith, District Judge.

Argued: April 29, 2011

Decided and Filed: December 23, 2011

Before: McKEAGUE and WHITE, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen P. Hardwick, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Gene D. Park, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Stephen P. Hardwick, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Gene D. Park, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge.  Brett Ruhlman appeals the district-court order denying his petition for habeas corpus, challenging his Ohio state-court sentence on *ex-post-facto* and due-process grounds.  We **AFFIRM**.

## *BACKGROUND*

On April 28, 2004, Ruhlman was indicted on one count of rape, a first-degree felony under Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(b), for acts committed against an 11-year-old girl; a jury convicted him of the lesser-included offense of attempted rape, a second-degree felony under O.R.C. §§ 2923.02/2907.02.

In Ohio, felonies of the second degree are subject to a presumption of incarceration, O.R.C. § 2929.13(D)(1), and a prison term ranging from two to eight years, *id.* § 2929.14(A)(2).  At the time Ruhlman committed the instant offense and was first sentenced in 2005,  Ohio statutes provided for a rebuttable presumption in favor of minimum sentences.  Specifically, the law provided:

> (B) . . . if the court . . . elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense . . . , unless one or more of the following applies:
>
>> (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
>>
>> (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
>
> (C) . . . the court . . . may impose the longest prison term authorized for the offense . . . only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders . . . and upon certain repeat violent offenders . . . .

*Id.* § 2929.14.  Thus, under then-applicable law, an Ohio defendant convicted of a second-degree felony faced a presumptive prison sentence of two years, unless the court determined that a sentence of probation adequately satisfied the overriding purposes of felony sentencing, *id.* § 2929.13(D)(2), or that § 2929.14(B) or (C) supported a sentence above the shortest, two-year, term.  In addition, trial courts were required in some circumstances to explain on the record their reasons for imposing a particular sentence,[1] including when imposing the maximum prison term allowed by § 2929.14(A) for a single offense.  § 2929.19(B)(2)(d).  Correspondingly, appeals courts reviewing such sentences were required to "review the record, including the findings underlying the sentence or modification given by the sentencing court."  *Id.* § 2953.08(G)(2).

At Ruhlman's first sentencing, the trial court made specific findings, including that Ruhlman had served a prison term for a prior conviction, that he was a sexual predator, and that he posed the greatest likelihood of recidivism.  Based on these findings, the court sentenced Ruhlman to serve eight years in prison.  Ruhlman appealed, arguing, *inter alia*, that the sentence violated his rights under the Sixth Amendment of the United States Constitution, as construed by *Blakely v. Washington*, 542 U.S. 296 (2004).  In *Blakely*, the Supreme Court held that courts cannot rely on judicial findings of fact to impose a sentence greater than the statutory maximum allowed by a jury verdict or by the defendant's admissions.  *Id.* at 303; *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  The Court also made clear that –

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*.  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

---

[1] Under O.R.C. § 2929.19(B)(2), a sentencing court was required to explain on the record its reasons for selecting a particular sentence if:  (a) the court imposed a prison sentence for a felony of the fourth or fifth degree; (b) the court did not impose a prison term for a felony of the first or second degree; (c) the court imposed consecutive sentences under § 2929.14; (d) the court imposed the maximum prison term allowed for a single offense by § 2929.14(A); or (e) the sentence was intended as punishment for two or more offenses arising from a single incident and the court imposed the maximum sentence allowed for the offense of the highest degree.

*Blakely*, 542 U.S. at 303-04 (internal citations omitted).

While Ruhlman's appeal was pending, the Supreme Court of Ohio decided *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), which considered *Blakely*'s effect on Ohio's noncapital sentencing laws. As specifically relates to this case, *Foster* held that O.R.C. § 2929.14(B) and (C) were unconstitutional because they provided for increased sentences based on judicial factfinding. 845 N.E.2d at 494. Applying the same remedy employed by the United States Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), the Ohio Supreme Court struck down and severed §§ 2929.14(B)-(C) and 2929.19(B)(2) from the statute and applied its ruling to all criminal cases pending on direct review. *Foster*, 845 N.E.2d at 498-99.

The *Foster* decision resulted in a sentencing system wherein "judicial fact-finding is not required before a prison term may be imposed within the basic ranges of [O.]R.C. [§] 2929.14(A) based upon a jury verdict or admission of the defendant." *Id.* at 498. As it applied to the severed sections, *Foster* also rendered moot § 2953.08(G)(2), the provision requiring appellate courts to review the trial court's factual findings on appeal. *Id.*; *State v. Kalish*, 120 Ohio St. 3d 23, 25, 896 N.E.2d 124, 128 (2008). Post-*Foster*, Ohio trial courts have full discretion to impose any sentence within the ranges of § 2929.14(A), including the statutory maximum, without making specific findings of fact or explaining their decisions on the record. *See Kalish*, 896 N.E.2d at 128; *Foster*, 845 N.E.2d at 498.

Consistent with *Foster*, Ruhlman's case was remanded for resentencing. The trial court held a new hearing and again sentenced Ruhlman to serve eight years. In doing so, the court considered the sentencing factors of O.R.C. §§ 2929.11 and 12,[2] but

---

[2]Pursuant to O.R.C. § 2929.11(A), "[a] court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing[, *i.e.*,] to protect the public from future crime by the offender and others and to punish the offender." In imposing sentence, the court must consider "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* The court may also consider other factors, such as whether the victim suffered serious physical, psychological, or economic harm, whether the victim had a prior physical or mental condition that was exacerbated by the defendant's act, whether there were substantial grounds to mitigate the defendant's conduct, and any other relevant factors. *See* O.R.C. § 2929.12 (B)-(C).

made no finding of fact, other than that Ruhlman is a sexual predator, and did not address the factors that had previously governed the decision to impose the statutory maximum. Ruhlman appealed, arguing that his sentence violated the *Ex Post Facto* and Due Process Clauses of the Ohio and United States Constitutions. The Ohio Court of Appeals rejected this argument. After exhausting his state remedies, Ruhlman petitioned for habeas corpus under 28 U.S.C. § 2254, asserting that by retroactively applying the *Foster* decision to his sentencing, the Ohio courts violated the *Ex Post Facto* and Due Process Clauses of the United States Constitution. The district court denied the petition, but granted Ruhlman's requests for a certificate of appealability and leave to appeal *in forma pauperis*.

## *ANALYSIS*

This Court reviews a district court's decision to deny habeas relief *de novo*, *Sanborn v. Parker*, 629 F.3d 554, 564 (6th Cir. 2010), and its factual findings for clear error, *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008). Because Ruhlman filed his habeas petition after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, we review the last reasoned state-court decision on the issue to determine whether that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). A state court's determination is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state-court decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## A.          *Ex Post Facto* **Claim**

The *Ex Post Facto* Clause provides that "no State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. As interpreted by the Supreme Court, the Clause prohibits the legislative enactment of any law that, *inter alia*, "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (*quoting Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (*seriatim* opinion of Chase, J.)). It is well established that the *Ex Post Facto* Clause "does not of its own force apply to the Judicial Branch of government." *Id.* (*quoting Marks v. United States*, 430 U.S. 188, 191 (1977)). For this reason alone, Ruhlman's *Ex Post Facto* Clause challenge fails. *See Webb v. Mitchell*, 586 F.3d 383, 392 (6th Cir. 2009).

Moreover, the *Ex Post Facto* clause does not apply to procedural changes. *See Dobbert v. Florida*, 432 U.S. 282, 293 (1977) ("Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto*."). To implicate the *Ex Post Facto* Clause, a change must affect "substantial personal rights," not just "modes of procedure which do not affect matters of substance." *Id.* (quotation marks and citation omitted). *Foster* did not alter the nature of the conduct for which Ruhlman was convicted nor the range of punishment he faced under O.R.C. § 2929.14(A)(2).

## B.          **Due Process Claim**

The Due Process Clause provides a means by which to challenge a judicial decision on *ex-post-facto* grounds. The Supreme Court has recognized that "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Rogers*, 532 U.S. at 456. In *Bouie v. City of Columbia*, the Court held that "[i]f a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." 378 U.S. 347, 354 (1964) (quotation marks and citation omitted). *Bouie*'s expansive language caused many courts, including this one, to conclude that the *Ex Post Facto* and Due Process Clauses were co-extensive. *See, e.g.*, *Gall v. Parker*, 231 F.3d

265, 305 (6th Cir. 2000).  Subsequently, the Supreme Court clarified that *Bouie* was based on "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Rogers*, 532 U.S. at 459; *see also United States v. Barton*, 455 F.3d 649, 654 (6th Cir. 2006) ("[W]hen addressing ex post facto-type due process concerns, questions of notice, foreseeability, and fair warning are paramount.").  Thus, when examining whether a judicial interpretation of criminal law (either statutory or common-law based) violates these concerns, the relevant consideration is whether that decision is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers*, 532 U.S. at 462 (internal quotation marks omitted); *Barton*, 455 F.3d at 653.

Ruhlman argues that *Foster* unexpectedly and indefensibly transformed the *elements* of his offense into mere sentencing *factors*.  It is true that reclassifying the elements of an offense into sentencing factors can raise due-process concerns.  *See Blakely*, 542 U.S. at 302 n.6 (noting that the Constitution limits a legislature's ability to reclassify the elements of a crime as sentencing factors); *Ring v. Arizona*, 536 U.S. 584, 602 (2002) ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt."); *id.* at 605 ("[T]he characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury.").

Ruhlman argues that under Ohio's original sentencing scheme, above-minimum sentences were reserved for "aggravated" crimes and were contingent upon specific findings of fact.  Indeed, before *Foster* revised Ohio's sentencing law, trial courts could not impose maximum sentences (or any sentence above the presumptive minimum) without finding certain facts by a preponderance of the evidence.  *See* O.R.C. § 2929.14(B)-(C).  According to Ruhlman, these facts were actually statutory elements of an aggravated offense.  Subsequent to *Foster*, however, trial courts may impose any sentence within the statutory range without any specific finding of fact.  Ruhlman argues

that *Foster* transformed the elements that were a prerequisite for above-minimum sentences into sentencing factors that courts can consider at their discretion and that, by retroactively applying *Foster* to this case, the trial court violated his due-process rights.

We disagree and conclude that Ruhlman's due-process rights were not violated. *Foster* did not alter the applicable sentencing range for attempted rape, which has consistently been two to eight years. *See* O.R.C. §§ 2923.02, 2907.02, 2929.14(A)(2). Nor did it alter the elements of the substantive offense of attempted rape. Further, when Ruhlman committed the offense, he was subject to a sentence in excess of two years by virtue of the fact that he had served a prior prison term. *See id.* § 2929.14(B)(1). In addition, at the time he committed the offense, Ruhlman was on notice that he was subject to a longer sentence contingent upon a trial-court finding that a minimum sentence would demean the seriousness of his conduct or would not adequately protect the public from future crimes, O.R.C. § 2929.14(B)(2), and a maximum eight-year sentence if the sentencing court found him to be a sexual predator who posed the greatest likelihood of recidivism. *See id.* § 2929.14(C). Therefore, pre-*Foster*, Ruhlman was on notice that he could receive an eight-year sentence for his actions if the court were to make certain findings. The court made these findings at Ruhlman's first sentencing and imposed the maximum sentence. The fact that the court imposed that very sentence post-*Foster* was neither "unexpected [nor] indefensible by reference to the law" that applied when Ruhlman committed his offense. *Bouie*, 378 U.S. at 354 (citation omitted).

The Ohio Supreme Court's determination that the relevant portions of Ohio's statutory sentencing scheme violated *Blakely* and its decision to sever those portions does not in and of itself implicate *ex-post-facto*-type due-process rights. The court simply acknowledged that if a fact is necessary to support a particular sentence, that fact must be found by the jury, rather than a judge. The court remedied the problem by following *Booker* and severing and striking the provisions, with the result that any sentence within the range specified by statute for the offense could be imposed by the court if consistent with the remaining sentencing criteria. Defendants committing crimes before *Foster* cannot claim that they have an *ex-post-facto*-type due-process right to have

sentencing elements found by a jury, because the unconstitutionality of the sentencing scheme does not negate its existence.

*Dobbert, supra,* is instructive. *Dobbert* involved a defendant who committed murder a few months before *Furman v. Georgia*, 408 U.S. 238 (1972), invalidated a number of state capital-punishment statutes. In response to *Furman*, Florida enacted a new death-penalty law that complied with the Supreme Court's directives; the defendant was convicted and sentenced to death under this new statute. *Dobbert*, 432 U.S. at 288-89. Since *Furman* had rendered Florida's earlier capital-punishment statute unconstitutional, the defendant argued that there was no death penalty "in effect" in Florida when he committed the murder and that his conviction and sentence under the new law violated the *Ex Post Facto* Clause. *Id.* at 297. The Supreme Court rejected this claim as "sophistic," "highly technical," and inconsistent with the Court's statement in *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374 (1940):

> The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law, that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. . . . It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored.

*Dobbert*, 432 U.S. at 297-98 (internal citations omitted). The Court concluded:

> Here the existence of the statute served as an "operative fact" to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder. This was sufficient compliance with the ex post fact provision of the United States Constitution.

*Id.* at 298. As in *Dobbert*, the statute in effect at the time Ruhlman committed the instant offense "served as an 'operative fact' to warn" Ruhlman that certain factors would render him subject to a greater sentence.

Ruhlman also takes issue with the fact that *Foster* discarded Ohio's statutory presumption in favor of minimum sentences. Before *Foster*, absent the necessary findings of fact, courts were required to impose "the shortest prison term authorized" for a given offense. Ruhlman argues that by severing O.R.C. § 2929.14(B)-(C), *Foster* eliminated the presumption that the proper sentence for his second-degree felony would be two years, *see* § 2929.14(A)(2), and replaced it with a presumption that eight years is just as appropriate, thereby violating his due-process rights.

Ruhlman's argument ignores that, notwithstanding the statutory presumption in favor of minimum sentences, he was always subject to a longer prison term based on his having previously served a prison term,[3] and the seriousness of his crime, as determined by the trial court. In *Miller v. Florida*, 482 U.S. 423, 425-26 (1987), which Ruhlman cites for support, Florida had a sentencing scheme that attributed a presumptive sentencing range to each offender. "Within the recommended range, the sentencing judge had discretion to fix the sentence without the requirement of a written explanation. If the sentencing judge wished to depart from the guideline range, however, the judge had to give clear and convincing reasons in writing for doing so." *Id.* at 426 (quotation marks and citation omitted). Only sentences falling outside the guidelines' range were subject to appellate review. *Id.* When the defendant was convicted, his presumptive sentence was 3 1/2 – 4 1/2 years, but before he was sentenced, the state issued revised guidelines that increased his sentencing range to 5 1/2 – 7 years. *Id.* at 425-27. The defendant received seven years under the revised guidelines. *Id.* at 428. The Supreme Court struck down the sentence on *ex-post-facto* grounds, stating:

> To impose a 7-year sentence under the old guidelines, the sentencing judge would have to depart from the presumptive sentence range of 3 1/2 to 4 1/2 years. As a result, the sentencing judge would have to provide clear and convincing reasons in writing for the departure, on facts proved beyond a reasonable doubt, and his determination would be reviewable on appeal. By contrast, because a 7-year sentence is within the presumptive range under the revised law, the trial judge did not have to

---

[3]The Supreme Court has made clear that recidivism is not regarded as an "element" of the offense for *Blakely* sentencing purposes. *See James v. United States*, 550 U.S. 192, 214 n.8 (2007); *Blakely*, 542 U.S. at 301; *Almendarez-Torres v. United States*, 523 U.S. 224, 243-47 (1998).

> provide any reasons, convincing or otherwise, for imposing the sentence, and his decision was unreviewable.  Thus, even if the revised guidelines law did not "technically . . . increase . . . the punishment annexed to [petitioner's] crime," *it foreclosed his ability to challenge the imposition of a sentence longer than his presumptive sentence under the old law.* Petitioner therefore was "substantially disadvantaged" by the retrospective application of the revised guidelines to his crime.

*Id.* at 432-33 (quoting *Lindsey v. Washington*, 301 U.S. 397, 401 (1937) (alteration in *Miller*)) (emphasis added).

Here, in contrast to *Miller*, Ruhlman was always subject to an eight-year sentence upon a finding that he posed the greatest likelihood of committing future crimes. Further, Ruhlman retained his appellate rights after *Foster*.

We do not hold that there can be no *ex-post-facto*-type due process violation engendered by *Foster*.  It is possible that a defendant who served no prior prison term ,who is sentenced to a greater-than-minimum term notwithstanding the absence of any of the statutory factors that were necessary to support a greater-than-minimum sentence pre-*Foster* could support an *ex-post-facto*-type due process claim.[4]  Ruhlman, however, cannot.

Finally, Ruhlman argues that, by severing the requirement that courts set forth on the record their reasons for imposing the maximum sentence under the statute, *Foster* eliminated any meaningful review of criminal sentences in Ohio.  At Ruhlman's initial sentencing, the trial court explained its decision to impose the maximum term possible for the offense, as required by O.R.C.  §§ 2929.14(C) and 2929.19(B)(2)(d).  When Ruhlman was resentenced post-*Foster*, the court recited that it had considered various materials, as well as the principles and purposes of sentencing, and balanced the seriousness and recidivism factors.  It also found Ruhlman to be a sexual predator.  The court did not, however, repeat the findings set forth in the original judgment, specifically

---

[4] Any such potential claims would presumably be defeated by Ohio sentencing courts employing the simple expedient of continuing to make findings correlating to the severed portions of the statute in cases where the offense was committed pre-*Foster*, although expressly recognizing that the provisions do not control the sentence and are being discussed solely for due process purposes, and imposing minimum sentences for pre-*Foster* offenses if no such findings can be made.

the finding that Ruhlman poses the greatest likelihood of recidivism. Ruhlman argues that *Foster* unconstitutionally abridged his appellate rights by limiting the reviewability of his sentence on appeal.  Again, we disagree.

*Miller* also deals with the *ex-post-facto* alteration of appellate rights.  However, in *Miller*, the defendant was statutorily barred from appealing his sentence because it was within the presumptive guidelines range.  482 U.S. at 433.  By contrast, Ohio law allows defendants like Ruhlman to challenge sentences that are "contrary to law." O.R.C. § 2953.08(A)(4).  Thus, unlike the defendant in *Miller*, Ruhlman retained his right to appeal his sentence and, in fact, did so.

Lastly, because we decide this case under AEDPA, our review is deferential.  In denying Ruhlman's *Ex Post Facto* and Due Process arguments, the Ohio Court of Appeals relied on its prior decisions, which in turn relied on *United States v. Jamison*, 416 F.3d 538 (7th Cir.), *rehr'g & rehr'g en banc denied*, No. 05-1045, 2005 U.S. App. LEXIS 18258 (7th Cir. Aug. 24, 2005).  In *Jamison,* the Seventh Circuit joined the Fifth and Eleventh Circuits in rejecting an *ex-post-facto* challenge to the remedial holding of *Booker* rendering the United States Sentencing Guidelines advisory.  *Id.* at 539 (citing *United States v. Scroggins*, 411 F.3d 572, 576 (5th Cir. 2005), *cert. denied*, 552 U.S. 932 (2007); *United States v. Duncan*, 400 F.3d 1297, 1307-08 (11th Cir.), *cert. denied*, 546 U.S. 940 (2005)).  In light of these cases, and the absence of a Supreme Court ruling on this matter, we cannot say that the Ohio Court of Appeals' decision here was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

### *CONCLUSION*

For the reasons set forth above, the district court's denial of Ruhlman's petition for habeas corpus is **AFFIRMED.**