RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0168p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HENRY HILL; JEMAL TIPTON; DAMION TODD; BOBBY HINES; KEVIN BOYD; BOSIE SMITH; JENNIFER PRUITT; MATTHEW BENTLEY; KEITH MAXEY; GIOVANNI CASPER; JEAN CARLOS CINTRON; NICOLE DUPURE; DONTEZ TILLMAN, individually and on behalf of those similarly situated,

> *Plaintiffs-Appellees*,

*v.*

RICK SNYDER, in his official capacity as Governor of the State of Michigan; HEIDI E. WASHINGTON, Director of the Michigan Department of Corrections; MICHAEL EAGEN, Chair, Michigan Parole Board; BILL SCHUETTE, Attorney General,

> *Defendants-Appellants*.

No. 18-1418

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-14568—Mark A. Goldsmith, District Judge.

Decided and Filed:  August 14, 2018

Before:  MERRITT, STRANCH, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Kathryn M. Dalzell, B. Eric Restuccia, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellants.  Deborah A. LaBelle, Ann Arbor, Michigan, Daniel S. Korobkin, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, Brandon J. Buskey, Steven M. Watt, AMERICAN CIVIL LIBERTIES FOUNDATION, New York, New York, for Appellees.

———————————

**OPINION**

———————————

STRANCH, Circuit Judge.   For the second time in less than twelve months, we find ourselves confronted with Michigan's statutory scheme for resentencing individuals who were convicted of first-degree murder and received mandatory sentences of life without parole for acts they committed as children.  The present incarnation of this dispute, now approaching its eighth year, concerns a statutory provision that is collateral to Plaintiffs' resentencing—the elimination of the good time and disciplinary credits that Plaintiffs earned while they served their now-unconstitutional mandatory life sentences.  Plaintiffs contend that this elimination violates the Ex Post Facto Clause of the Constitution; Defendants say it does not.  We now join the growing chorus of voices (both state and federal, including the district court in this case) that have unanimously deemed this statutory scheme unconstitutional.  We **AFFIRM** the decision of the district court.

## I.  BACKGROUND

### A.  Case Overview

This being our third appellate review in this litigation, we conserve both ink and paper by incorporating the factual and procedural overviews set forth in our prior opinions.  *See Hill v. Snyder* (*Hill I*), 821 F.3d 763, 765–70 (6th Cir. 2016); *Hill v. Snyder* (*Hill II*), 878 F.3d 193, 199–203 (6th Cir. 2017).  In brief:  Plaintiffs amended their complaint in 2016 to address the changed legal landscape following the Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016), and Michigan's 2014 amendments to its juvenile sentencing scheme, Mich. Comp. Laws §§ 769.25, 769.25a.  The Second Amended Complaint (SAC) included allegations that Michigan's policies and procedures governing parole deny Plaintiffs a meaningful opportunity for release in violation of the Eighth and Fourteenth Amendments (Count IV); the deprivation of Plaintiffs' good time and disciplinary credits in Section 769.25a(6) violates the Ex Post Facto Clause (Count V); and Defendants have failed to provide the Plaintiffs with access to programming, education, training,

and rehabilitation opportunities in violation of the Eighth and Fourteenth Amendments (Count VI).  The district court granted Defendants' motion to dismiss the SAC.  We reversed that decision with respect to Counts IV, V, and VI, *see Hill II*, 878 F.3d at 209–13, and remanded the case for further proceedings, *id.* at 215.

Since our last decision, the case has been assigned to a new district court judge and the parties have briefed cross motions for partial summary judgment and Plaintiffs' motion for class certification.  (Both parties sought summary judgment on Counts V and VI; Count IV was not addressed.)  The district court granted Plaintiffs' requests for summary judgment on Count V and for class certification, but denied the cross-motions without prejudice in all other respects.  In awarding summary judgment on Count V, the district court ordered permanent injunctive relief that prohibited Defendants from enforcing or applying the statutory provision that effected the credit elimination, Mich. Comp. Laws § 769.265a(6).  Defendants sought a stay from the district court and then from this court, both of which were denied.  They now appeal the district court's Count V summary judgment decision.

## B.  The Statutory Scheme

Our analysis necessarily begins with the development of Michigan's statutory scheme for good time credits and disciplinary credits.  As of 1978, prisoners could apply good time credits to both their minimum and their maximum terms.  *Lowe v. Dep't of Corr.*, 521 N.W.2d 336, 337 (Mich. Ct. App. 1994) (setting forth the statutory evolution of good time and disciplinary credits).  The Michigan legislature amended the law in 1978, and thereafter certain prisoners, including those convicted of first-degree murder, could apply good time credits to their maximum terms only.  *Id.*  In 1987, Michigan eliminated good time credits entirely for offenses committed on or after April 1 of that year.  *Id.* at 338.  The current good time credit provision, which includes mandatory application language, does not distinguish among crimes.  *See* Mich. Comp. Laws § 800.33(2) (providing that "a prisoner who is serving a sentence for a crime committed before April 1, 1987, and who has not been found guilty of a major misconduct or had a violation of the laws of this state recorded against him or her *shall receive* a reduction from his or her sentence as follows . . . ." (emphasis added)).

Michigan created disciplinary credits in 1982. *Lowe*, 521 N.W.2d at 337–38. At first, these credits applied to both the minimum and maximum sentences, including the sentences of individuals convicted of first-degree murder. *Id.* at 337. In 1998, Michigan eliminated disciplinary credits for individuals convicted of first-degree murder after December 15 of that year. *See* Mich. Comp. Laws §§ 800.33(14) and 800.34(5). The current disciplinary credit provision includes expansive and mandatory application language. *See* Mich. Comp. Laws § 800.33(3) ("[*A*]*ll* prisoners serving a sentence for a crime that was committed on or after April 1, 1987 *are eligible to earn* disciplinary and special disciplinary credits as provided in subsection (5). Disciplinary credits *shall be earned*, forfeited, and restored as provided in this section. Accumulated disciplinary credits *shall be deducted* from a prisoner's minimum and maximum sentence in order to determine his or her parole eligibility date and discharge date." (emphases added)).[1] The statute specifically includes individuals convicted of first-degree murder. *See* § 800.33(5) ("[A]ll prisoners serving a sentence on December 30, 1982, or incarcerated after December 30, 1982, for the conviction of a crime enumerated in section 33b(a) to (cc) of MCL 791.233b, [which includes first-degree murder in section 33(b)(n),] are eligible to earn a disciplinary credit of 5 days per month for each month served after December 30, 1982.").

The statute at issue in Count V was enacted in 2014 and covers individuals who were sentenced to mandatory life without parole for juvenile first-degree murder convictions. We previously described this provision as follows:

> This provision applies to juveniles who received mandatory sentences of life without parole before *Miller* and who are now entitled to resentencing, including Plaintiffs. This provision incorporates portions of Section 769.25 and outlines the process by which prosecutors may seek and courts may consider renewed sentences of life without parole; the term-of-years sentences that apply in the absence of a prosecutorial motion seeking life without parole; and the elimination of good time and disciplinary credits. This provision does not require courts to consider the *Miller* factors when resentencing youth offenders to terms of years. *See* Mich. Comp. Laws § 769.25a(4)(c).

*Hill II*, 878 F.3d at 202. Section 769.25a(6) specifies that "[a] defendant who is resentenced under subsection (4) shall be given credit for time already served, but shall not receive any good

---

[1]Appellants' briefing erroneously asserts that disciplinary credits no longer exist. They apparently misunderstand their own statutory regime, as this provision makes clear that disciplinary credits are extant.

time credits, special good time credits, disciplinary credits, or any other credits that reduce the defendant's minimum or maximum sentence." Plaintiffs argue that this last subsection disadvantages them by retroactively removing the credits that they had earned while serving their previous sentences of life imprisonment.

### C. State Court Proceedings

In this litigation, Plaintiffs bring a facial challenge to the constitutionality of Count V on a classwide basis, an approach we endorsed in *Hill II*. 878 F.3d at 215 ("Today's decision leaves to Michigan courts the normal task of resentencing state prisoners under state law. Should any class members wish to bring individualized challenges to their new sentences, they may do so via direct appeal or habeas."). In bringing challenges to their new sentences, several individuals have also homed in on the constitutional infirmities of Section 769.25a(6). After the district court granted summary judgment and while the parties briefed this appeal, the Michigan Court of Appeals considered the direct sentencing appeals of two such individuals. *See People v. Wiley*, -- N.W.2d--, 2018 WL 2089549 (Mich. Ct. App. May 4, 2018).[2] The *Wiley* court adopted the district court's Count V analysis in full and held Section 769.25(a)(6) unconstitutional. Notably, this did not affect the panel's decision to affirm the defendants' sentences. *Id.* at \*16 ("We affirm defendants' sentences, but declare [Mich. Comp. Laws §] 769.25a(6) to be unconstitutional."). Defendants have sought to appeal this decision to the Michigan Supreme Court, and have requested expedited resolution. As of this writing, the Michigan Supreme Court has not acted on the *Wiley* appeal. *See People v. Wiley*, No. 158019 (Mich.).

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

The district court entered final judgment in Plaintiffs' favor on Count V, and this court has jurisdiction pursuant to 28 U.S.C. 1291. The district court's decision both declined to abstain and awarded summary judgment to Plaintiffs. "This Court reviews abstention decisions de novo." *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002). We also review

---

[2]The *Wiley* decision also encompasses another case, *People v. Rucker*, No. 338870 (Mich. Ct. App. May 4, 2018).

de novo a district court's decision to grant summary judgment. *Schleicher v. Preferred Sols., Inc.*, 831 F.3d 746, 752 (6th Cir.), *cert. denied*, 137 S. Ct. 531 (2016). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**B. Abstention**

As a threshold matter, Defendants ask the court to determine that the district court should have abstained from considering Count V under either of two doctrines, *Pullman* abstention or *Younger* abstention. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Younger v. Harris*, 401 U.S. 37 (1971). We address each doctrine in turn.

In *Pullman*, the Supreme Court "held that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). The equitable considerations of *Pullman* abstention are typically applied when an unsettled state-law question is best decided by or already pending in state courts. *See Harris Cty. Comm'rs Court v. Moore*, 420 U.S. 77, 83–84 (1975). These days, in the face of novel questions of state law, many federal courts rely on state Supreme Court certification procedures, which avoid the "significant financial and time burdens" associated with *Pullman* abstention. *Jones v. Coleman*, 848 F.3d 744, 750 (6th Cir. 2017) (describing how questions of state law may be certified to state Supreme Courts to avoid the drawbacks of *Pullman* abstention). Defendants contend either *Pullman* abstention or certification would be appropriate in this case.

Defendants, however, have not identified an unsettled question of state law that would support *Pullman* abstention or certification to the Michigan Supreme Court. The thrust of Defendants' *Pullman* argument seems to be that whether Plaintiffs earned good time credits while serving their life sentences is an unsettled question of Michigan law that must be answered, in the first instance, by Michigan courts. That argument fails for two reasons. First, the relevant Michigan statutes are not "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Jones*, 848 F.3d at 751 (quoting *City of Houston v. Hill*, 482 U.S. 451, 468 (1987)). For the reasons discussed below,

the relevant statutory provisions are unambiguous, and they support Plaintiffs' position. Second, Michigan courts have already made clear that individuals serving sentences of life without parole who receive new sentences may not be deprived of the credits earned during their prior sentences. *See, e.g.*, *Moore v. Buchko*, 154 N.W.2d 437 (Mich. 1967) (awarding good time credits to a prisoner whose life-without-parole sentence was vacated as unconstitutional and who then received a term-of-years sentence). The Michigan Court of Appeals has even addressed the very statutory provision before this court and, in adopting the reasoning of the district court, has demonstrated that *Buchko*'s holding endures and applies here. *Wiley*, 2018 WL 2089549, at *9–14 (adopting Judge Goldsmith's "persuasive" analysis that held Mich. Comp. Laws § 769.25a(6) unconstitutional). Accordingly, there is no unsettled state-law question that necessitates further delaying resolution of Count V.

Defendants also reprise their request for *Younger* abstention. In doing so, they attempt to construe our *Hill II* decision as rejecting *Younger* for only Counts II and IV, and not Count V. This is not so. In *Hill II*, we rejected *Younger* abstention whole cloth because the late stage of the litigation rendered the doctrine incongruous and inapplicable. *See* 878 F.3d at 207 (holding *Younger* inapplicable to "Plaintiffs' claims," without limitation). We refused to countenance further delay, holding that *Younger* abstention was inappropriate not only because the federal litigation predated the purportedly conflicting state proceedings, but primarily because we determined that over seven years into the case was too late to *even reevaluate* the exercise of federal jurisdiction:

> [Defendants] conflate[] the question of whether to abstain with the threshold question of whether we should even consider abstention at this juncture. Defendants offer no authority, and we can find none, that would support the proposition that the filing of an amended complaint requires a federal court to reexamine whether to exercise its duly-authorized jurisdiction.

*Id.* at 205. We are once again unable to locate any authority that would support setting aside our jurisdiction at this stage of the case and abdicating of our "virtually unflagging obligation" to decide those cases properly before us. *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (citation omitted). If considering *Younger* abstention was inappropriate nearly a year ago in response to an amended complaint, it is even more so now.

A march through the *Younger* analysis, moreover, would provide no reason to abstain. As the district court aptly recognized, Count V goes to the calculation of credits by the Michigan Department of Corrections (MDOC); it has no bearing on Plaintiffs' resentencing. Accordingly, resolution of Count V will not interfere with any ongoing state-court proceedings. *See Wiley*, 2018 WL 2089549, at *16 (illustrating that the Count V resolution is collateral by both affirming the sentence and holding Mich. Comp. Laws § 769.25a(6) unconstitutional); *see also Gerstein v. Pugh*, 420 U.S. 103, 107 n.9 (1975) (noting that *Younger* does not bar equitable relief where the injunction is directed not at "state prosecutions as such" but rather at collateral proceedings that could not be raised in defense of the criminal prosecution). There is no cause for federal court abstention here.

### C. Count V

Count V of the SAC alleges that Mich. Comp. Laws § 769.25a(6) violates the Ex Post Facto Clause by "subject[ing] Plaintiffs to a harsher punishment than the law in effect at the time of their offense and original sentencing." Broadly speaking, "[a]n ex post facto law possesses two elements: (1) 'it must apply to events occurring before its enactment,' and (2) 'it must disadvantage the offender affected by it.'" *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)). The Supreme Court has identified the "controlling inquiry" to be "whether retroactive application of the change in [state] law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Garner v. Jones*, 529 U.S. 244, 250 (2000) (quoting *California Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). Whether "a change in law creates such a risk is 'a matter of degree'; the test cannot be reduced to a 'single formula.'" *Peugh v. United States*, 569 U.S. 530, 539 (2013) (quoting *Morales*, 514 U.S. at 509).

*Hill II* teaches that "the retroactive elimination of credits implicates the *Ex Post Facto* Clause." 878 F.3d at 211 (discussing *Weaver v. Graham*, 450 U.S. 24 (1981)). We explained that in *Weaver*, the Supreme Court held that Florida violated the Ex Post Facto Clause when it retroactively applied a statute eliminating gain-time release credits, akin to good time credits, because the elimination "'ma[de] more onerous the punishment for crimes committed before its enactment.'" *Id.* (alteration in original) (quoting *Weaver*, 450 U.S. at 35–36). The Supreme

Court reaffirmed its position in *Lynce v. Mathis*, holding unconstitutional a Florida statute canceling provisional release credits.  519 U.S. 433, 445–46 (1997).

Here, the inquiry is whether the elimination of credits in Section 769.25a(6) creates a sufficient risk of increasing the punishment attached to Plaintiffs' convictions.  The statute provides:

> A defendant who is resentenced under subsection (4) shall be given credit for time already served, but shall not receive any good time credits, special good time credits, disciplinary credits, or any other credits that reduce the defendant's minimum or maximum sentence.

Mich. Comp. Laws § 769.25a(6) (emphasis added).  The text of the statute says it all—it eliminates credits "that reduce the defendant's minimum or maximum sentence."  By its terms, this provision makes a defendant's sentence more onerous, and thus violates the Ex Post Facto Clause.

As we pointed out in *Hill II* and as the district court noted, Jennifer Pruitt's situation illustrates the precise harm exacted by this provision:  "Under Section 769.25a(6), [Pruitt] will not be eligible for review by the Michigan Parole Board for at least four years.  If her disciplinary credits were to be restored, she would be eligible for review now."  878 F.3d at 213.  This kind of delay in eligibility creates a risk of increased punishment sufficient to violate the Ex Post Facto Clause.  Michigan caselaw supports this conclusion.  *See Buchko*, 154 N.W.2d at 439 ("An alternative contention made by plaintiff is that the statute, even in its original form, requires a sentencing judge to allow credit for past time served under an erroneous conviction, and we agree."); *Wayne Cty. Prosecuting Attorney v. Mich. Dep't of Corr.*, No. 186106, 1997 WL 33345050, at *4 (Mich. Ct. App. June 17, 1997) ("Moreover, to deny prisoners in Holbrook's position the right to have good-time and special good-time credits applied to their maximum terms would run afoul of the state and federal constitutional prohibitions against the enactment of ex post facto laws.  A law enacted after the date of a prisoner's sentence that attempts to reduce the amount of credit given for good behavior, and in effect increases the sentence, is unconstitutional." (citations omitted)).

Despite the relative simplicity of this issue, Defendants advance a number of arguments in support of reversing the district court. None persuade. First, Defendants assert that Plaintiffs' "accrual of credits [wa]s meaningless, without value, and pointless" while they had life-without-parole sentences. This position at least acknowledges that Plaintiffs earned credits during their life sentences, a fact that is evident from the mandatory language of Michigan's good time and disciplinary credit statutes. *See* Mich. Comp. Laws §§ 800.33(3), (5), (14). Indeed, the elimination provision in Section 769.25a would itself be meaningless and pointless if Plaintiffs had not earned credits during their life sentences. Defendants' argument otherwise misapprehends the relevant inquiry in an ex post facto claim. The issue is not how to quantify the value of the credits earned during Plaintiffs' previous sentences; our inquiry is whether the retroactive elimination of credits disadvantages Plaintiffs now. On this point, it is worth noting that disciplinary credits also carry another kind of value—they "encourage good behavior by prisoners" and "thus generally . . . improve the conditions in the prisons and reduce custodial costs to the taxpayers." *Buchko*, 154 N.W.2d at 447. Good time credits, too, provide a unique benefit—hope. *Id.* ("[S]ince hope and post conviction pleas spring eternal within the incarcerated human breast, it cannot be said the good time credit law is not at least some encouragement to [those imprisoned for life].").

Second, Defendants say that because Plaintiffs have switched from certain life in prison to a term-of-years sentence, they cannot be worse off than they were before. This dismissive conclusion loses sight of important constitutional maxims. Or, to use Defendants' jargon, this before-versus-after comparison uses the wrong "baseline." The correct baseline is what Plaintiffs' punishments would look like if Section 769.25a (identified in Count V) had not retroactively removed the credits they earned while serving unconstitutional sentences. The answer is clear: better. With the credits, Plaintiffs would be eligible for release at an earlier time. Without them, Plaintiffs are likely to languish in prison for additional years. The relief achieved by removal of an unconstitutional sentence cannot sanitize an embedded Ex Post Facto Clause violation.

Third, Defendants assert that reinstating the credits will undermine Michigan's goal of uniformity. Because the "credit regime changed multiple times through" the period in which

Plaintiffs were convicted, Defendants say, "the number of credits a Plaintiff or class member would be entitled to . . . depends on the year of his crime." That is nothing new. The variation Defendants complain of was born from statutory changes that Defendants effected; it would be perverse to allow them to invoke these amendments as a shield. Moreover, variation exists regardless of the nature of the offense. Someone convicted on March 31, 1987, will have access to good time credits while someone convicted of the same offense the very next day will not. In such situations, indeed for all individuals, MDOC will—as it always has—look to the date of conviction and reverse engineer the applicable credits. The potential for variation exists for all Michigan prisoners, and Defendants have not explained why uniformity among this particular class of offenders is necessary, or even important.

Nor is there any reason to think that the lack of uniformity creates any problems with administrability. Richard Stapleton, former Administrator of the MDOC Office of Legal Affairs, explained in his affidavit that "[e]ligibility as to whether good time or disciplinary credits are applied to a prisoner's sentence ha[s] always been determined by the MDOC based on the date of the prisoner's offense." Stapleton stated that MDOC can "effectively recalculate prisoner release dates upon resentencing using the centralized database in a very short period of time for each case." Defendants' ad hoc uniformity complaints are therefore without merit. And even if uniformity were an issue, it would not take priority over Plaintiffs' constitutional rights.

Finally, Defendants highlight that no term-of-years sentences existed for first-degree murder crimes when Plaintiffs were convicted. This point goes back to Defendants' argument that "the credits had no value as long as the offenders were serving a sentence that did not have a fixed duration." But Plaintiffs accrued credits under the laws in place when they were convicted, and, as discussed above, what matters is that the elimination of the credits disadvantages them now. *Cf. United States v. Kruger*, 838 F.3d 786, 791 (6th Cir. 2016) (explaining that ex post facto violations have arisen when plaintiffs seek credits that would have been available to them at the time of conviction).

If we focus on the proper question—whether Plaintiffs are disadvantaged by Section 769.25a(6)'s elimination of credits—the answer is apparent. Plaintiffs have suffered an Ex Post Facto Clause violation because the elimination of credits delays their eligibility for release.

Defendants' arguments to the contrary do not disturb this straightforward conclusion. The district court's decision to grant summary judgment and permanent injunctive relief to Plaintiffs on Count V was proper.

### III. CONCLUSION

We, like the Michigan Court of Appeals, find the analysis of the district court persuasive and correct. Defendants have not identified a reason for federal court abstention, and their arguments for reversing the award of summary judgment lack merit. Both parties have achieved victories and suffered defeats over the nearly eight years of this litigation. Today's decision, the third to hold that Section 769.25a(6) violates the Ex Post Facto Clause of the United States Constitution, should be the last skirmish in this long dispute. It is well past time to put to rest litigation tactics and further delay. It is now time to devote the energies of the parties to rectifying the constitutional harm suffered by Plaintiffs. The judgment of the district court is **AFFIRMED** and the case is remanded for expeditious relief.