COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

and

ATTORNEY GENERAL,

        Intervening Appellee,

v

CORTEZ ROLAND DAVIS,

        Defendant-Appellant.

UNPUBLISHED
November 6, 2018

No. 338658
Wayne Circuit Court
LC No. 94-002089-01-FC

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

SWARTZLE, P.J. (*concurring*).

I concur with the majority's resolution of defendant's claims involving (1) his original, flawed sentence, and (2) the trial court's clerical correction to the judgment of sentence. With respect to defendant's claim involving disciplinary or other sentencing-reducing credits (collectively, "sentencing credits"), I concur with the judgment but disagree with binding precedent for the reasons stated in an earlier case:

> There is a certain Alice-in-Wonderland quality to the argument that the Legislature violated the Ex Post Facto Clause of the U.S. and Michigan Constitutions, US Const art I, § 10; Const 1963, art 1, § 10, when it provided that [sentencing] credits that were earned-but-not-applied when a juvenile offender was serving a life sentence still cannot be applied when that offender is resentenced to a lesser term-of-years sentence. Credits not applied before, credits not applied now, lesser term-of-years sentence—and yet this is somehow a change in the law that *disadvantages* the juvenile offender? [*People v Jarrett*, unpublished opinion of the Court of Appeals, issued August 16, 2018 (Docket No. 338986) (Swartzle, P.J. concurring).]

I offer a few additional comments on the issue of sentencing credits and the Ex Post Facto Clause. Given the various parties in the cases discussed below, for ease of reference, I use the

-1-

terms "juvenile lifer" or "defendant" to refer to prisoners subject to MCL 769.25a(6), and the term "Attorney General" to refer to the parties representing the prosecutors or state.

Article I, § 10, of the federal Constitution prohibits a state from passing any "ex post facto Law." Similarly, article 1, § 10 of Michigan's Constitution of 1963 prohibits the state from enacting any "ex post facto law." Michigan's provision is coextensive with its federal counterpart. *People v Callon*, 256 Mich App 312, 317; 662 NW2d 501 (2003). There are several types of ex-post-facto laws, and the one pertinent here is a law that "makes more burdensome the punishment for a crime, after its commission." *Dobbert v Florida*, 432 US 282, 292; 97 S Ct 2290; 53 L Ed 2d 344 (1977) (cleaned up). As the federal Supreme Court explained in *Dobbert*, "It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law." *Id.* at 294.

There are now two published decisions by appellate courts holding that the Michigan Legislature violated the Ex Post Facto Clause by enacting MCL 769.25a(6). See *Hill v Snyder*, 900 F3d 260 (CA 6, 2018); *People v Wiley*, __ Mich App __ (2018) (Docket Nos. 336898, 338870); slip op at 2, 20. The statutory provision applies to those juvenile lifers who must be resentenced under *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, __ US __; 136 S Ct 718; 193 L Ed 2d 599 (2016), and for whom the prosecutor has decided to seek a term of years under subsection (4) rather than reimposition of life without parole. The provision states, "A defendant who is resentenced under subsection (4) shall be given credit for time already served, but shall not receive any good time credits, special good time credits, disciplinary credits, or any other credits that reduce the defendant's minimum or maximum sentence." MCL 769.25a(6).

The *Hill* and *Wiley* courts held that the statute disadvantaged those juvenile lifers who were resentenced to a term of years by eliminating sentencing credits that could be used to reduce their now-term sentences. *Hill*, 900 F3d at 269; *Wiley*, slip op at 14, 19-20 (noting that the "reduction" in the sentence would result from shortening the time a defendant would become eligible for parole). The Attorney General has made a plausible argument that, under Michigan's sentencing laws, juvenile lifers could not accumulate sentencing credits while serving a life sentence, let alone have them unconstitutionally eliminated upon resentencing. But, setting this aside and assuming *arguendo* that juvenile lifers could earn and accumulate sentencing credits, the *Hill* and *Wiley* decisions still violate at least two fundamental tenets of our ex-post-facto jurisprudence:

1. The new law must be considered *in toto* to determine whether it results in more severe punishment. *Dobbert*, 432 US at 294; see also *Weaver v Graham*, 450 US 24, 37-39; 101 S Ct 960; 67 L Ed 2d 17 (1981) (Rehnquist, J, concurring in the judgment).

2. The new law must be compared to the prior law actually in effect at the time, even if that prior law is later determined to be unconstitutional. *Dobbert*, 432 US at 297-298; see also *Ruhlman v Brunsman*, 664 F3d 615, 621-622 (CA6, 2011).

*In Toto v. In Isolation.* When faced with an ex-post-facto claim that the new statute is "more burdensome" than the old one, a court "must compare the two statutory procedures *in toto* to determine if the new may be fairly characterized as more onerous." *Dobbert*, 432 US at 294. As then-Justice Rehnquist explained, the set of policies put in place by the new statute should "be viewed as a total package." *Weaver*, 450 US at 38 (Rehnquist, J, concurring in the judgment); see also *United States v Anderson*, 61 F3d 1290, 1303 (CA 7, 1995); *Cromwell v US Parole Comm'n*, 724 F2d 1406, 1409 (CA 3, 1984).

This makes sense, as with almost any statutory change, there may be some aspect of the new statute that, viewed myopically in isolation, could be described as more onerous than the prior one. Our ex-post-facto jurisprudence does not require that the criminal defendant benefit from each policy change. Rather, considered "*in toto*," "as a total package," the new statute must not be more onerous than the one it replaced.

The *Hill* and *Wiley* courts did not consider MCL 769.25a *in toto*, nor did they even consider subsection (6) *in toto*. Rather, they focused solely on whether, today and in the future, the sentencing credits purportedly earned by a juvenile lifer would now have some sentence-reduction value when that defendant was resentenced to a term of years. Yet, by ignoring the tenet to consider the statutory change *in toto*, the *Hill* and *Wiley* courts have created a rather unsound standard. By their logic, there would be an ex-post-facto violation if a statute eliminated sentencing credits altogether, but at the same time (though in another provision) required that a trial court impose a new sentence for each impacted defendant that was less than the original sentence as modified by the prior sentencing credits. The new sentence would necessarily be less onerous than the prior one, and yet, as I read *Hill* and *Wiley*, those decisions would support a finding that there was an ex-post-facto violation nonetheless.

Defendant remains guilty of first-degree murder, but rather than serving life without parole, under MCL 769.25a, he now has a term of imprisonment of 25 to 60 years with credit for time served, and any sentencing credits earned in the past would have precisely the same sentence-reduction value today and in the future—nil. A prison term of 25-60 years with credit for time served is less onerous than a sentence of life without parole, regardless of any sentencing credits. Thus, on balance, MCL 769.25a provides a clear and unequivocal *reduction* in "the quantum of punishment" for this and similar defendants. *Dobbert*, 432 US at 294. Defendant cannot demonstrate—under any scenario—that retroactive application of MCL 769.25a "will result in a longer period of incarceration than under the earlier" provisions that governed his conviction and sentence. *Garner v Jones*, 529 US 244, 255; 120 S Ct 1362; 146 L Ed 2d 236 (2000).

*Ex Post Facto, Not Ex Post Hypothetico.* Compounding their error, the *Hill* and *Wiley* courts both rely upon the presumption that the sentencing credits would have some value when earned had the juvenile-lifer defendant not been serving a life sentence. *Hill*, 900 F3d at 268; *Wiley*, slip op at 17, 19. The point is conceded but irrelevant. The punishment under the new law must be compared with something and not in a vacuum, and as our jurisprudence makes clear, the "something" is the *actual* prior punishment imposed for the criminal act, not the punishment that *should have* or *could have* been imposed for that criminal act. Remember, it is an Ex Post Facto Clause that we are expounding, not an Ex Post Hypothetico Clause.

As this Court has explained, "The critical question is whether the law changes the legal consequences of acts completed before its effective date." *Callon*, 256 Mich App at 318 (cleaned up). In answering the question, courts must identify the operative "acts" as well as the "legal consequences," determine whether the law changes the latter, and, if so, whether to the defendant's detriment or benefit? Here, the operative act is the first-degree murder, and the legal consequences include the sentence of life without parole as well as the value, if any, of sentencing credits to that life sentence. If the change in the law does not make the legal consequences more onerous, then there can be no ex-post-facto violation.

When defendant in the present case murdered his victim, when he was charged, convicted, and sentenced to life without parole for that murder, and when he earned each sentencing credit while serving that life sentence, defendant knew (actually or constructively) that the credits had no value to him for purposes of reducing his sentence. The possibility of a life-without-parole sentence for first degree murder is an "operative fact" that put defendant on reasonable notice that if he committed that crime and received that sentence, then any sentencing credits he might earn while serving that sentence would have no sentence-reduction value. *Dobbert*, 432 US at 298; *Ruhlman*, 664 F3d at 622. The subsequent *Miller* and *Montgomery* decisions finding that life sentences for juveniles are unconstitutional in certain circumstances do "not negate [the] existence" of the life sentences that were actually prescribed, imposed, and partially served. *Ruhlman*, 664 F3d at 621.

*Hill* and *Wiley* cite decisions where a state changed a sentencing-credit scheme in violation of the Ex Post Facto Clause. See *Lynce v Mathis*, 519 US 433, 445-446; 117 S Ct 891; 137 L Ed 2d 63 (1997); *Weaver*, 450 US at 35-36. Yet, these cases involved prisoners who had earned credits that could actually be used to reduce an existing term-of-years sentence or move up a parole-eligibility date. See *Lynce*, 519 US at 435-436; *Weaver*, 450 US at 25-27. In other words, the credits—when earned—had actual value to the prisoners in those cases, and subsequent legislation lessened or eliminated that actual value, thereby effectively increasing the quantum of punishment. To the contrary here, the sentencing credits had no sentence-reduction value when earned by a defendant convicted of first-degree murder and sentenced to life without parole.

Finally, both *Hill* and *Wiley* also cite our Supreme Court's decision in *Moore v Buchko*, 379 Mich 624; 154 NW2d 437 (1967), as further support for their holdings. Yet, this is another instance of the wrong comparison being made. There was no majority opinion in *Moore*, so its value as binding precedent is unclear. But, even setting that aspect aside, the prisoner in *Moore* had his conviction changed from first-degree murder to second-degree murder, and his corresponding sentence was changed to a term of years. *Id.* at 628-629. Thus, it was legally determined that the prisoner had not, in fact, committed first-degree murder, but rather had, in fact, committed second-degree murder. When he committed the criminal act, the sentence for second-degree murder was a term of years, and any time served and credits earned could be used to lessen that term of punishment. See *id.* at 629. In the present case, defendant remains convicted for first-degree murder, and everyone agrees that when he committed the act and was sentenced to life without parole, sentencing credits could not be used to lessen that punishment. *Moore* is simply inapposite.

Accordingly, were we writing on a clean slate, I would hold that MCL 769.25a(6) does not violate the Ex Post Facto Clause. The slate is not clean, however, and therefore on this point I concur only in the judgment.


/s/ Brock A. Swartzle